IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROSS & BARUZZINI, INC.,

Plaintiff,

v.                                                         12-cv-00152-DRH

THE ESTOPINAL GROUP, LLC,
f/k/a THE ESTOPINAL GROUP, INC.

Defendant.

MEMORANDUM AND ORDER

HERNDON, Chief Judge

I. Introduction and Background

Now before the Court is defendant's motion for summary judgment (Doc. 41). Defendant argues that the record is devoid of evidence in support of plaintiff's tortious interference claim. Defendant further argues that under Illinois law, any purported threats by defendant toward Sarah Bush Lincoln Health Center ("Sarah Bush") and the filing of the lawsuit against Lamaster cannot serve as a basis for a tortious interference claim. Obviously, plaintiff opposes the motion (Doc. 46). Based on the applicable law, the record and the following, the Court grants the motion.

On July 7, 2012, plaintiff Ross & Baruzzini, Inc. ("R&B") filed a one-count amended complaint against The Estopinal Group, LLC ("TEG"). Both parties are architecture and design firms. Plaintiff's complaint asserts

a state law claim of tortious interference with R&B's business expectancy with Sarah Bush, a nonprofit Illinois hospital. Specifically, R&B alleges that TEG tortiously interfered with R&B's expected business with Sarah Bush by: 1) bringing a "frivolous and bad faith" action against R&B employee Stan Lamaster out of spite or ill will and (2) threatening reprisal against Sarah Bush in the event Sarah Bush continue its business relationship with Lamaster and/or R&B.

According to the amended complaint, Lamaster was a former employee of TEG. On December 21, 2011, after TEG discovered that Sarah Bush and R&B were in contact regarding architectural services, TEG moved for a temporary restraining order against Lamaster, asserting breach of non-solicitation agreement and other claims. On December 23, 2011, the Circuit Court of St. Louis County denied TEG's motion for temporary restraining order. Plaintiff asserts that TEG's action was frivolous, as there was no valid contract between Lamaster and TEG, and, moreover, that TEG knew that it was frivolous. On or about January 4, 2012, Sarah Bush notified R&B that it intended to seek a different firm for its architectural needs, expressing concern about TEG's action against Lamaster. Plaintiff requests actual, compensatory, and punitive damages.

## II. Facts

Plaintiff is an architectural and interior design team. Defendant is also an architectural and interior design team. Plaintiff and defendant are competitors. Wyane Estopinal is TEG's president. Stan L. Lamaster worked at TEG as an architect from June 1994 to March 2003 and May 2006 until September 28, 2011, when he resigned. Lamaster's last day of work at TEG was September 30, 2011. That day, Lamaster signed a document, entitled Termination Certification, in which he stated that he had no TEG documents or property belonging to TEG in his possession. Immediately thereafter, Lamaster went to work for plaintiff. Before employing Lamaster, plaintiff's architectural work was for governmental entities and TEG's architectural work was for private healthcare.

Sarah Bush is not-for-profit regional hospital locating in Coles County, Illinois. Sarah Bush provides a full range of acute care services to the residents of Cole County and the surrounding 19 counties in East Central and Southern Illinois. In the summer of 2011, Sarah Bush began the second phase of a $48 million expansion and renovation project in Mattoon, Illinois called "Master Facility Plan Part 2."

Dennis Pluard ("Pluard"), Sarah Bush's Vice President of Operations, is responsible for the decisions as to who Sarah Bush utilizes for architectural construction services as those provided by plaintiff and

defendant. In making this determination, Pluard confers with Tim Kastl, Sarah Bush's director of facility services and Tom Ols, Sarah Bush's CEO.

In 2008, Sarah Bush engaged TEG to perform architecture, engineering, and interior design services. Also, in 2010, Sarah Bush used TEG with respect to Part 1 of the Master Facility Plan project. At this time, Lamaster was the lead architect and main contact for TEG on the Sarah Bush project.

Sarah Bush asked Lamaster on behalf of TEG on September 20, 21, 22, 2011, prior to his advising Sarah Bush that he was leaving TEG, to begin work on Part 2. After Lamaster left TEG's employ and went to work for R&B, Kastl and Pluard asked Lamaster to stay on as Sarah Bush's architect and asked for a proposal on the space planning and programming project. R&B, through Lamaster prepared the space planning proposal. Thereafter, Sarah Bush engaged and paid R&B to complete the space planning project. Sarah Bush did not solicit any other bids for the Master Facility Plan Part 2.

Lamaster leaving TEG concerned Sarah Bush as it had good working relationship with both TEG and Lamaster. TEG continued to work on the Master Facility Plan, Part 1 after Lamaster left. The new point person for TEG on Part 1 was John Sprouls. Sprouls consistently asked Kastl and Pluard if there was more work TEG could be doing for Sarah Bush or if

certain projects were moving forward. Pluard and Kastl told Sprouls that there was not more work and that future projects were on hold.

On November 17, 2011, Sprouls and Susan McCane saw Lamaster at Sarah Bush. Lamaster informed them that he was working at Sarah Bush. Thereafter, TEG filed the Missouri lawsuit against Lamaster. The Missouri lawsuit alleges that Lamaster: (1) breached the TEG Team Plan agreement with TEG not to solicit or compete with TEG for TEG's customers; (2) took and used TEG's confidential information; and (3) breached his duty of loyalty to TEG. Specifically, the claims asserted in the Missouri lawsuit are: breach of non-solicitation agreement; breach of confidentiality agreement, tortious interference with business expectancy and breach of the duty of loyalty. On December 27, 2011, the St. Louis County Circuit Court denied TEG's motion for temporary restraining order.

Sometime between December 26 and December 30, 2011, Estopinal and Pluard spoke on the telephone; in which Pluard called Estopinal. Estopinal told Pluard that TEG had a contract with Lamaster that prohibited Lamaster from working with Sarah Bush at R&B. Estopinal did not go into the details about the lawsuit with Pluard. On December 30, 2011, Estopinal sent Pluard an email stating, "[w]hile the situation Stan Lamaster put himself in should be of concern, it should not stop or slow down your efforts to transform your health system."

On January 4, 2012, Pluard informed plaintiff that it decided to stop working with R&B on the project because it did not want to be put in the middle of the lawsuit and because it was concerned about project delays. The same day, Pluard called Estopinal to inform him that Sarah Bush was not moving forward with R&B.

On January 21, 2012, plaintiff filed this action against TEG alleging one count of tortious interference with business expectancy (Doc. 2). On July 12, 2012, plaintiff filed an amended complaint containing the same count (Doc. 33).

### III. Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v.* Shannon, 539 F.3d 751, 756 (7th Cir. 2008). Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a

genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

## IV. Analysis

TEG argues that it is entitled to summary judgment as there is no evidence to support R&B's claim of tortious interference.  Further, TEG argues that any purported threats by TEG toward Sarah Bush and the filing of the lawsuit against Lamaster by TEG cannot serve as a basis for a tortious interference of claim.  Plaintiff opposes the motion arguing that TEG lacked a basis for bringing the lawsuit against Lamaster because there was not a no-compete agreement and there was no basis to assert that Lamaster had taken confidential documents and that TEG knew that the contract did not exist.[1]  Specifically, plaintiff maintains that TEG purposefully interfered with its relationship with Sarah Bush by pursuing a knowingly baseless and malicious lawsuit, repeatedly defaming Lamaster to Sarah Bush and threatening to slow down Sarah Bush's projects by embroiling Lamaster in litigation over false allegations.  Based on following, the Court agrees with TEG's reasoning and finds that TEG is entitled to summary judgment.

---

[1] As noted by TEG in its reply brief, R&B spends devotes most of its brief in opposition contending that the Missouri lawsuit is frivolous and lacks merit.  The Court finds that this discussion is irrelevant for the purposes of the motion before the Court.

Under Illinois law, to establish a *prima facie* claim for tortious interference with business expectancy, a plaintiff must show: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and (4) damage to the plaintiff resulting from the defendant's interference. *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996); *See also Rock Falls v. Chicago Title & Trust Co.*, 300 N.E.2d 331, 333 (Ill. App. 1973). If the interference complained of does "not rest on some legitimate interest, or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed. . . ." *Rock Falls*, 300 N.E.2d at 333 (citing 45 Am.Jur.2d *Interference* § 1).

Furthermore, the Court notes that "[u]nder Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." *Havoco of America, Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983)(citing *Lyddon v. Shaw*, 372 N.E.2d 685, 690 (Ill App. 1978)("Illinois law prohibits [plaintiff] from basing a cause of action for tortious interference with business opportunity on the wrongful filing of a lawsuit.").

Here, the Court finds that R&B cannot show an intentional and unjustified interference by the defendant that induced or caused a breach

or termination of the expectancy. In fact, the evidence reveals that Lamaster informed Sarah Bush about the lawsuit; not TEG. Pluard testified that Sarah Bush did not know about the Missouri lawsuit until Lamaster told Sarah Bush about it. TEG was not the instigator of discussions with Sarah Bush about the Missouri lawsuit. In fact, Lamaster involved Sarah Bush in the lawsuit by requesting affidavits from Sarah Bush's employees, Kastl and Pluard and by sending subpoenas to Sarah Bush for motions in the Missouri lawsuit. Pluard testified that: "It was the conversation with [Lamaster] that gave me the most reason to pause." Plaintiff's response confirms that TEG made no threats of reprisal toward Sarah Bush to induce Sarah Bush to cease work with plaintiff. Pluard testified that he was not influenced by the lawsuit between TEG and Lamaster and that TEG did not threaten Sarah Bush regarding the Missouri lawsuit.[2] Pluard stated that he was a little upset with Estopinal for not telling him about the Missouri lawsuit, but understood why he did not tell him. Plauard Depo. Exh. E, ps. 59-60; lines 14-3. Moreover, Pluard specifically testified that he did not consider the email to be a threat

---

[2] Pluard testified the following as to threats: "Q. Up to this point, has TEG involved you in this case or the state case in any way? A. They have not asked me to be involved in any form that I am aware of." Q. (By Mr. LaRose) Have they ever made any threats about involving you in litigation? A. No. Q. Have they ever made threats to delay the first part of the Mattoon project? A. No. Have they ever made threats to inadequately perform on the part of the Mattoon project? Mr. Limley: Vague as to the word threat. A. No. Q. (By Mr. LaRose) I think that you said this earlier, but they haven't offered to confer any benefits to you about and beyond what is in the contract, have they? A. No." Pluard Depo. Exh. E, pg. 214 – 215; lines 7 to 4.

that work would slow down or that quality would suffer.[3] Likewise, Kastl testified that Sarah Bush did not perceive the email as a threat. Clearly, TEG did not subject Sarah Bush to any influence or interference with R&B.

Finally, the Court finds that the Missouri lawsuit cannot, as a matter of law, give rise to R&B's tortious interference of business expectancy claim. As noted above, Illinois law and public policy are clear: Illinois favors providing litigants access to courts without fear of prosecution and, therefore, Illinois Courts have prohibited any enlargement of the potential tort liability incurred by those who file even groundless lawsuits. *Ray Dancer, Inc. v. DMC Corp.*, 594 N.E.2d 1344 (Ill. App. 1992)("*Havoco* adhered to the holding of *Lydon v. Shaw* (1978), 56 Ill.App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d 685, wherein the court rejected an effort to extend the tort of liability for the wrongful filing of a lawsuit beyond the ambit of an action for malicious prosecution or abuse of process into a cause of action for tortious interference of business opportunity. Free access to the courts as a means of settling private claims or disputes is a fundamental component of our judicial system and "courts should be open to litigants for the settlement of their rights without fear of prosecution for calling upon the courts to determine such rights.")(quotations and citations omitted).

### IV. Conclusion

---

[3] "I don't believe that [TEG's] level of service would have gone down had we went with R&B." Pluard Depo. Exh E, pg. 163; lines 12-14

Accordingly, the Court **GRANTS** defendant's motion for summary judgment (Doc. 41).  The Court finds in favor of defendant The Estopinal Group, LLC and against plaintiff Ross & Baruzzini, Inc.  The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 18th day of September, 2013.

**Chief Judge
United States District Court**